UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 FEB 24  A 10: 28

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| ALDEN SHOE COMPANY, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>SHOES BY JOSEPH SCORSONE, INC. d/b/a )<br>JOSEPH'S SHOES, )<br><br>Defendant. ) | Civil Action No. **05 10362 DPW** |

**AFFIDAVIT OF RICHARD G. HAJJAR**

I, Richard G. Hajjar, hereby depose and state the following:

1.     I am the Vice-President of the Alden Shoe Company ("Alden"), a position I have

held for 16 years.  Alden is a family-owned and operated company, incorporated in

Massachusetts and located at One Taunton Street in Middleborough, Massachusetts.

2.     Though it began as a smaller company, over the years Alden has grown to its

current size of approximately 150 employees, and the regions in which Alden shoes are

distributed has grown exponentially.  Today, for example, Alden shoes are sold in all fifty states

and internationally in Europe and Asia.

3.     Alden has manufactured men's shoes in New England since its founding in 1884,

and has built its reputation by producing consistently high quality shoes for over 120 years.  This

quality is maintained by selecting only the best raw materials and employing well-trained

manufacturing employees.  Alden also invests over $300,000 per year in marketing initiatives to

increase the quality and visibility of Alden shoes.

4.      In all of the regions in which Alden shoes are sold, advertisement costs are lowered because of the strength of Alden's reputation. Name recognition, trademark recognition, and word-of-mouth advertising account for approximately 70% of Alden's sales. As such, the goodwill of Alden's customer base is immensely important to Alden's future success. Many of our local retailers do advertise locally, but only with express permission to use the Alden trademark.

5.      The Alden trademark has become synonymous with high-end footwear in New England and beyond. The trademark itself is distinctive, comprising of the word "Alden" in large gold font above the words "of New England" in smaller font. Above these words sits a golden crest with the date of Alden's founding in 1884. Alden registered this trademark with the United States Office of Patent and Trademarks in 1991, but the trademark itself has been in continuous use by Alden since 1884.

6.      Alden is largely a manufacturer of men's shoes. It typically does not also distribute these shoes, which is not uncommon for specialty and/or higher quality shoe manufacturers. Alden depends primarily on forming authorized retail agreements with high-end or specialized shoe stores that can provide the type of qualified customer assistance that an Alden customer requires. The idea behind this business model is that a well-fitting shoe is a comfortable shoe, and a comfortable shoe leads to a happy customer who is likely to stay loyal. In fact, approximately 60% of Alden's customers have been customers for more than 10 years. Yet, Alden is not a niche shoe manufacturer – anyone in the market for quality footwear will eventually come to Alden, whether young or old.

7.      In 1996, Alden began its business relationship with Joseph Scorsone, President of Joseph's Shoes, Inc. ("Joseph's Shoes") in Philadelphia, Pennsylvania. Alden had previously

2

been in business with Mr. Scorsone's father, who owned a smaller shoe store in Philadelphia. When Mr. Scorsone's father left the business, Alden continued its relationship with his son, Joseph Scorsone. Neither father nor son Scorsone was authorized to sell Alden shoes online.

8.      During the first few years of Alden's association with Joseph's Shoes, the relationship was acceptable. After awhile, Joseph's Shoes fell behind in paying the invoices for products shipped by Alden. At one point, Joseph's Shoes owed Alden upwards of $30,000 in outstanding bills. With every missed payment, Alden wrote a letter requesting Joseph's Shoes to pay its bills; each letter was ignored. Finally, in June of 2001 Alden hired a collection agency to recover its debt from Joseph's Shoes.

9.      As a result of Joseph's Shoes refusal to pay its bills in a timely fashion, Alden terminated the relationship in 2001 and stopped providing Joseph's Shoes with Alden products.

10.     In 2003 it was brought to the attention of Alden's Vice-President of Sales, Robert Clark, that Joseph's Shoes was still holding itself out as an exclusive retailer of Alden shoes. At this point, the authorized retailer agreement that Alden entered with Joseph's Shoes in 1996 had been terminated since 2001. It was also brought to Alden's attention that Joseph's Shoes was purporting to sell Alden shoes at drastically reduced prices. These lowered prices were directly undercutting legitimate Alden retailers, such as Gross Menswear, D'Amicantonio & Sons, and Sherman Brothers, all of which are high-end shoe retailers based in close proximity to Joseph's Shoes in Philadelphia. In some situations, these legitimate retailers actually dropped their prices to meet those set by Joseph's Shoes, who are unlikely to even have a stock of authentic Alden Shoes. It has also been expressed to me that when pressed on their stock of Alden Shoes by potential customers, Joseph's Shoes' employees have been misinforming these customers that Alden is going out of business. Alden is assuredly not going out of business.

3

11.     Once Alden learned of Joseph's Shoes' action, it was immediately brought to the attention of our legal counsel.  Our attorneys wrote multiple letters to Joseph Scorsone, requesting that he stop misusing our trademark and that he stop misleading the public by holding himself out as an exclusive retailer of Alden shoes, which he is not.  Joseph's Shoes never responded to Alden's pleas.

12.     More recently, it has come to Alden's attention that the Alden trade name is embedded in the Joseph's Shoes website source code.  This use of Alden's name allows potential shoe consumers who are looking for Alden Shoes on the Internet to be misled to Joseph's Shoes' own commercial website.  Joseph's Shoes was certainly never granted permission to use Alden's trademark and trade name in this fashion.

Signed under the pains and penalties of perjury this 11th day of February, 2005.


_____
Richard G. Hajjar


LIT 1499639v1

4