UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2005 FEB 24 A 10: 28

| | |
|---|---|
| ALDEN SHOE COMPANY, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SHOES BY JOSEPH SCORSONE, INC. d/b/a )<br>JOSEPH'S SHOES, )<br>)<br>Defendant. )<br>) | Civil Action No. 05-10362 DPW |

## PLAINTIFF ALDEN SHOE COMPANY, INC.'S
## MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

Pursuant to Fed. R. Civ. P. 65, Alden Shoe Company, Inc. ("Alden") respectfully requests that this Court issue a preliminary injunction against defendant Shoes by Joseph Scorsone, Inc., d/b/a Joseph's Shoes ("Joseph's Shoes" or "defendant"). As discussed more fully in plaintiff's *Memorandum of Law in Support*, this relief should be provided for the following reasons:

1. Both of the parties in this dispute are involved in the high-end men's shoe industry. The parties were, in fact, business partners until Alden terminated the relationship in 2001. Despite Alden's clear efforts to disassociate itself with the defendant after the relationship ended, Joseph's Shoes has relentlessly continued in a multi-faceted campaign to misappropriate consumer goodwill that Alden has fostered for over 120 years.

2. Not only is Joseph's Shoes blatantly infringing Alden's registered trademark by reproducing Alden's distinctive name and symbolic crest directly onto its own commercial website in an effort to hold itself out as an authorized retailer, but Joseph's Shoes is also using

the Alden trade name in its website metadata to hijack Internet-based consumer interest in Alden shoes directly to its own commercial website.

3. Both of these acts further Joseph's Shoes' ultimate scheme: to wrongfully capitalize on the name and goodwill engendered by Alden's name and unfairly compete with Alden and its authorized retailers.

4. As a result of this infringement on the part of Joseph's Shoes, Alden requires immediate injunctive relief to halt the defendant's unfair and deceptive business tactics.

      **WHEREAS**, Alden respectfully requests that this Court issue a preliminary injunction and order preventing the defendant from:

      a)    Using Alden's registered trademark and/or trade name on defendant's website;

      b)    Using Alden's registered trademark and/or trade name in defendant's website metadata, source code, or in any other embedded form on defendant's commercial website (www.josephshoes.com) or any other website affiliated with Joseph's Shoes; and

      c)    Using Alden's registered trademark and/or trade name to hold itself out as an authorized dealer of Alden shoes through advertisement on its website or in any other format, print, aural, or electronic.

### REQUEST FOR ORAL ARGUMENT

      Alden Shoes believes that oral argument may assist the Court and, therefore, respectfully requests a hearing on this matter.

Respectfully submitted,

**ALDEN SHOE COMPANY, INC.**

By its attorneys,

_/s/ Matthew C. Hurley_
William M. Hill, BBO # 546160
Matthew C. Hurley, BBO # 643638
Philip J. Catanzano, BBO # 654873
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000

Dated: February 24, 2005

LIT 1500970v1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE
2005 FEB 24  A 10: 28
U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| ALDEN SHOE COMPANY, INC., ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 05 10362 DPW |
| SHOES BY JOSEPH SCORSONE, INC. d/b/a ) JOSEPH'S SHOES, ) | |
| Defendant. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF ALDEN SHOE COMPANY, INC.'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

Plaintiff Alden Shoe Company, Inc. ("Alden") submits this memorandum of law in support of its motion for a preliminary injunction, in which Alden seeks to enjoin defendant Shoes by Joseph Scorsone, Inc., d/b/a Joseph's Shoes ("Joseph's Shoes" or "defendant") from continuing its infringement of Alden's registered trademark and from unfairly competing with the plaintiff.

### INTRODUCTION

This is a civil action for trademark infringement under §§ 32 and 43(a) of the Lanham Act and for common law unfair competition for claims arising from defendant's intentional infringement and continual misuse of Alden's registered trademark. Even though Alden terminated Joseph's Shoes as an authorized retailer of Alden's products, Joseph's Shoes continues to hold itself out as an authorized Alden retailer by reproducing Alden's registered trademark onto its website, posting professional photographs of Alden's Shoes on its website, and embedding Alden's trade name into the metatags of that website. Such blatant infringement

lies at the heart of the defendant's purposeful campaign to capitalize on the goodwill that Alden has painstakingly built over the past 120 years. Furthermore, defendant's actions have resulted in a likelihood of consumer confusion, causing Alden to suffer damages through the loss of business and the loss of current and potential customers and business partners.

The only relief that Alden seeks at this stage of the proceedings is an order prohibiting Joseph's Shoes from (1) using Alden's federally-registered trademark on its website or in connection with any other advertising; and (2) using Alden's trade name in its website metatags. As this memorandum outlines, there is a strong likelihood that Alden will succeed on its claims at trial and a preliminary injunction is warranted to enjoin Joseph's Shoes from its continued infringement and unfair competition with Alden's business. Absent an injunction, Alden faces a serious threat of irreparable harm to its business relations and to the goodwill it holds among customers and potential customers, as well as to the goodwill it holds among its business partners who are also adversely affected by defendant's infringement. The narrowly-tailored preliminary injunction that Alden seeks will preserve the status quo without causing any undue harm to Joseph's Shoes, which would simply be enjoined from falsely representing that it is an authorized retailer of Alden's products.

## FACTS

Alden is a family-owned company that has been manufacturing high quality shoes in Massachusetts since 1884.[1] Despite the extremely competitive footwear industry, Alden has prospered in large part due to its well-established reputation in the marketplace for premier quality, innovation, and style in men's footwear.[2] It has invested substantial amounts of time,

---

[1] *See* Affidavit of Richard G. Hajjar ("Hajjar Aff.") at ¶ 3.

[2] *See id.*

2

money, and effort in creating market awareness for its unique and exclusive products.[3/] As a result of Alden's efforts, its footwear and associated trademark have enjoyed tremendous marketplace acceptance and consumer recognition both regionally and nationally.[4/]

As with many high-end shoe manufacturers, Alden does not typically sell its shoes directly to the consumer.[5/] Instead, Alden enters into authorized distribution agreements with fine men's shoe stores that sell high-quality shoes and employ well-trained staff members who can assist the consumer in selecting the appropriate shoes.[6/] This business model ensures that Alden customers receive the proper attention and are completely satisfied with the Alden product that they purchase, thereby engendering continued consumer goodwill.[7/]

At one time, Joseph's Shoes was an authorized retailer of Alden products. But various problems arose during the course of the parties' business relationship, including defendant's failure to pay numerous invoices and otherwise demonstrating that it was not qualified to be an authorized Alden retailer. As a result, Alden terminated its distribution agreement with Joseph's Shoes in 2001 and stopped providing the defendant with Alden products.[8/] Despite Alden's termination of the parties' business relationship, Joseph's Shoes continues to advertise and hold itself out to the public as an authorized retailer of Alden shoes.[9/] Indeed, the defendant's website, www.josephshoes.com, prominently features Alden's registered trademark front and

---

[3/]  *See id.*

[4/]  *See id.* at ¶ 4.

[5/]  *See id.* at ¶ 6.

[6/]  *See id.*

[7/]  *See id.*

[8/]  *See id.* at ¶ 8-9.

[9/]  *See id.* at ¶ 10.

center on its main homepage, and also prominently displays professional photographs of Alden shoes and the opportunity to purchase purportedly authentic Alden shoes at discounted prices.[10]

In addition to its straightforward attempts to profit from Alden's reputation and goodwill, Joseph's Shoes has also attempted to siphon business from Alden in more underhanded ways. Specifically, Joseph's Shoes has embedded Alden's registered trademark into the metatags of its website.[11] Metatags are part of the underlying source code that allow a consumer browsing the Internet for a specific product to find that product by typing its name into an Internet search engine.[12] In this case, Joseph's Shoes has embedded Alden's trade name into its website metatags. As a result, potential shoe consumers that type the name "Alden Shoe(s)" into an Internet search engine are being lured to the defendant's website, even though it is not an authorized Alden retailer.

In late 2003, Alden first became aware that Joseph's Shoes was continuing to hold itself out to the public as an authorized retailer of Alden's products. From that time forward, Alden attempted to resolve the dispute amicably by requesting in writing on multiple occasions that Joseph's Shoes discontinue its unlawful practices.[13] But the defendant completely ignored Alden's letters. To make matters worse, Joseph's Shoes purports to offer Alden shoes at discounted prices on its website and has even misinformed customers that Alden is going out of

---

[10] See Affidavit of Philip J. Catanzano ("Catanzano Aff.") at ¶ 1.

[11] See id. at ¶ 2.

[12] "Metatags are HTML code intended to describe the contents of the web site...[D]escription metatags are intended to describe the web site; the keyword metatags, at least in theory, contain keywords relating to the contents of the web site. The more often a term appears in the metatags and in the text of the web page, the more likely it is that the web page will be 'hit' in the search for that keyword and the higher on the list of 'hits' the web page will appear." *Brookfield Communications Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1045 (9th Cir. 1999).

[13] See Catanzano Aff. at ¶ 3.

4

business.[14/] Because Alden stopped shipping its products to Joseph's Shoes in 2001, it is doubtful that defendant has an inventory of Alden shoes.[15/] Instead, it appears that Joseph's Shoes is advertising discounted prices for a nonexistent stock of Alden shoes solely to harass and harm Alden and its authorized retailers, who have often lowered their prices on Alden shoes to match the price that the defendant claims to be able to offer.[16/]

The defendant's willful and intentional actions interfere with the business relationship between Alden, its authorized dealers, and its customers. The defendant's actions are causing confusion in the marketplace, harming Alden by not only creating the erroneous impression that Alden is associated with Joseph's Shoes, but also by luring customers away from Alden and its authorized Alden retailers.

### ARGUMENT

#### I. The Legal Standard

The granting of a preliminary injunction under the Lanham Act requires a showing that (1) Alden stands a substantial likelihood of success on the merits; (2) it has been and will continue to be irreparably harmed absent an injunction; (3) the harm to Alden greatly outweighs the burden that imposition of an injunction might place on Joseph's Shoes; and (4) the grant of an injunction will not negatively affect the public interest. *See, e.g., Camel Hair & Cashmere Inst. of America, Inc. v. Assoc. Dry Goods Corp.*, 799 F.2d 6, 12 (1st Cir. 1986); *Digital Equip. Corp. v. Altavista Tech.*, 960 F.Supp. 456, 472 (D. Mass. 1997).

---

[14/]   *See* Hajjar Aff. at ¶ 10.

[15/]   *See id.*

[16/]   *See id.*

In the trademark context, where a party shows that it is likely to prevail on the merits of its infringement claim, there is a *presumption* of irreparable harm absent an injunction. *See Digital Equip.*, 960 F.Supp. at 472. Additionally, the preliminary injunction is assumed to be beneficial and in the public interest, "given the societal value of full disclosure and fair competition, together with the policy of the law to provide at least minimal protection to established trade names." *Id., quoting Hypertherm, Inc. v. Precision Prods., Inc.*, 832 F.2d 697, 700 (1st Cir. 1987). Thus, it has been held that the "heart" of the determination over whether injunctive relief should be granted in a trademark infringement case is whether there is a likelihood of success on the merits and, if so, whether the proposed injunctive relief will unfairly harm the enjoined party. *See Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1005 (D. Mass. 1998).

In this case, Alden satisfies every element of the standard for preliminary injunctive relief and Joseph's Shoes will not be unfairly harmed if an injunction is issued. Accordingly, the motion for preliminary injunction should be granted to preserve the status quo and safeguard Alden's registered trademark and business interests during the pendency of this litigation.

## II.  Alden is Likely to Succeed on the Merits

Alden is likely to succeed on the merits of its trademark infringement and unfair competition claims because of two related but separate acts by Joseph's Shoes. First, Joseph's Shoes is blatantly infringing the plaintiff's registered trademark by reproducing Alden's distinctive name and symbolic crest directly onto its own commercial website in an effort to hold itself out as an authorized retailer.[17] Second, Joseph's Shoes is using the Alden trade name in its website metadata to hijack Internet-based consumer interest in Alden shoes directly to its own

---

[17] *See* Catanzano Aff. at ¶ 1.

commercial website. Both of these acts further defendant's ultimate scheme: to capitalize wrongfully on the goodwill engendered by Alden's name and unfairly compete with Alden and its authorized retailers. As a result of this multi-faceted infringement on the part of Joseph's Shoes, Alden requires injunctive relief to halt the defendant's unfair and deceptive business tactics.[18]

Successful claims for trademark infringement require a plaintiff-trademark holder to show (1) that he uses, and thereby "owns," a distinctive trademark entitled to protection, (2) that the defendant is using that same or a similar mark in commerce, and (3) that the defendant's use is likely to confuse the public, thereby harming the plaintiff. *See DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 605 (1st Cir. 1992); *Calamari Fisheries*, 698 F.Supp. at 1006. In this case, as in most trademark disputes, Alden has clearly satisfied the first two elements of a successful trademark infringement claim: Alden is the registered holder of the distinctive trademark that the defendant has reproduced directly onto its commercial website without permission.[19] The essential issue, then, is whether the defendant's infringement is likely to confuse or mislead the public as to the respective goods. Courts assess several factors to answer this question. *See Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 486-87 (1st Cir. 1981).

### A.   *Similarities of the marks and similarity of the goods*

The first factor that courts examine when determining whether an allegedly infringing trademark is likely to confuse the public is the similarities of the mark and the similarities of the

---

[18] In examining both the infringement and the unfair competition claims, courts have held that "the same facts which would support an action for trademark infringement would also support an action for unfair competition." *Digital Equip.*, 960 F.Supp. at 476 n.40, *quoting Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975); *see also, Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 639-40 (1st Cir. 1992). In an effort to streamline the analysis, both claims will be examined together.

[19] *See* Hajjar Aff. at ¶ 5; Catanzano Aff. at ¶ 1.

7

goods being sold under the mark. In making this determination, "the total effect of the designation, rather than a comparison of individual features" is taken into account. *Id.* at 487. In this case, the marks at issue are the same. Joseph's Shoes is directly reproducing Alden's registered trademark and trade name directly onto its own website in an effort to hold itself out as an authorized retailer of Alden shoes. As a result, Alden has satisfied the first factor in the "likelihood of confusion analysis."

### B.  *Relationship between the parties' trade channels and advertisement*

The second factor is the relationship between the disputing parties' trade and advertisement channels, which are "conventionally analyzed together." *Copy Cop, Inc. v. Task Printing, Inc.*, 908 F.Supp. 37, 45 (D. Mass. 1995). In this case, both parties are involved in the footwear industry, as Alden manufactures and distributes shoes and Joseph's Shoes sells shoes in its retail store and on its national website. In essence, both Alden and Joseph's Shoes are competing for the same customers in the high-end shoe market.

### C.  *The knowledge and demographic of prospective purchasers and whether they are likely to be confused by the infringing conduct*

The next factor courts look at in determining whether there is a likelihood of consumer confusion is the knowledge and consuming savvy of prospective purchasers of the product at issue, as well as asking whether the parties involved in the dispute are likely to be catering to the same demographic. *See Northern Light Tech., Inc. v. Northern Lights Club*, 97 F.Supp.2d 96, 112 (D. Mass. 2000). In this case, the "typical" Alden customer is not limited to those well-versed in shoe quality, but also includes newcomers to the high-end and specialty shoe market.[20] As the courts have held, "when a buyer class is mixed, the standard of care to be exercised by the

---

[20]  *See id.* at ¶ 6.

8

reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class." *Id.*, at 112 *quoting Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 293 (3rd Cir. 1991). Given Alden's long history manufacturing quality shoes, Alden's market demographic ranges from consumers who have been faithful to the Alden name for many years to the first time purchaser and, as such, the standard for confusion must be lowered to meet this less-informed consumer.[21]

Furthermore, the market activity at issue here "takes place on the Internet where users 'are more likely to be confused as to the ownership of a web site than traditional patrons of a brick-and-mortar store would be of a store's ownership.'" *Id.* at 113, *quoting Brookfield Communications Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1057 (9th Cir. 1999). Not only is Joseph's Shoes reproducing the Alden trademark directly onto its commercial website, but it is also inserting the Alden trade name into its metatags, thereby luring unsuspecting consumers to its website. Such misuse of metadata constitutes infringement. *See Niton Corp. v. Radiation Monitoring Devices, Inc.*, 27 F.Supp.2d 102, 104-05 (D. Mass. 1998) (granting preliminary injunction based on the defendant's purposeful act of diverting consumers looking for the plaintiff's website to its own website through the use of embedded metadata).[22]

---

[21] *See id.*

[22] While *Niton* appears to be the primary Massachusetts case in which metadata abuse warranted injunctive relief, numerous jurisdictions have confronted the issue and granted equitable relief on such grounds. *See Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002) (holding that the use of another's trade name in metatags violated trademark law and injured the plaintiff's goodwill, thus necessitating injunctive relief); *SNA, Inc. v. Array*, 51 F.Supp.2d 554, 562-63 (E.D. Pa. 1999), (holding that defendant's use of plaintiff's trademark in its metatags violated the Lanham Act insofar as it guided web browsers to its website rather than the plaintiff's, and it appeared the defendant had done this intentionally); *Bernina of America, Inc. v. Fashion Fabrics Int'l, Inc.*, No. 01-C-585, 2001 WL 128164, at *3 (N.D. Ill. 2001) (holding that the defendant's use of the plaintiff's trademark in its metatags violated the Lanham Act insofar as it created in its website the impression that it was an authorized dealer of the plaintiff's product); *Aztar Corp. v. MGM Casino*, No 00-833-A, 2001 WL 939070, *5-6 (E.D. Va. 2001) (holding that the use of a famous and incontestable trademark as a metatag leading to a competing website violates that trademark).

### D.  *Evidence of actual confusion.*

The next factor that courts consider is whether the public is actually confused by the infringing conduct. Courts have held that while "proof of actual confusion is important, the lack of actual confusion is meaningful only in cases where marks have been side-by-side in the same market for long periods of time or when goods or services have substantial disparities." *Northern Light*, 97 F.Supp.2d at 113. In this case, Joseph's Shoes is not infringing Alden's mark in the traditional sense, *i.e.*, by creating its own mark that is strikingly similar to Alden's. Instead, the defendant is reproducing Alden's *actual* trademark in an effort to hold itself out as an authorized Alden affiliate and capitalize on Alden's goodwill.[23/] As a result, proof of actual confusion is unnecessary because the marks have not grown together over time in the market. Instead, Joseph's Shoes is attempting to consume in whole Alden's 120 year-old trademark.

### E.  *Intent of the defendant*

Courts also look to the intent of the defendant in determining whether the allegedly infringing conduct was intended to confuse the public. In this case, the defendant's intent to cause harm by capitalizing on Alden's goodwill is clear. The parties were involved in a business partnership until 2001, when Alden was forced to terminate the parties' relationship, primarily because the defendant would not pay its bills.[24/] Despite this termination, the defendant continues to market and advertise itself as a distributor of Alden shoes and has included the Alden trade name in its metadata to lure customers to its website. Alden, through counsel,

---

[23/]  4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25:43 (4th ed.) ("The right to resell a genuine branded item in an unchanged state should also carry with it the right to advertise to others that the dealer is selling those branded products, *so long as such advertising does not mislead customers into mistakenly believing that the dealer is an agent or an 'authorized distributor' of the manufacturer...* [A]n independent dealer can use the manufacturer's mark in advertising that it sells that brand of goods, but *it cannot do so in a manner which falsely suggest that the dealer is part of the manufacturer's franchise system.*") (emphasis added).

[24/]  *See* Hajjar Aff. at ¶ 8-9.

10

requested that the defendant cease and desist from its wrongful conduct, but the defendant has ignored Alden's requests.

### F. The strength of the plaintiff's mark

Finally, in assessing whether there is a likelihood of consumer confusion, courts look to the strength of the trademark in question. *See, e.g., Northern Light*, 97 F.Supp.2d at 114. In examining a mark's strength, courts consider "the length of time the mark has been used, its renown in the plaintiff's field of business, and the plaintiff's actions to promote the mark." *Star Fin. Serv., Inc. v. AASTAR Mortgage Corp.*, 89 F.3d 5, 11 (1st Cir. 1996); *see Int'l Assoc. of Machinists & Aerospace Workers v. Winship Green Nursing Ctr.*, 103 F.3d 196, 206 (1st Cir. 1996) (holding that the plaintiff's mark was strong because it had been duly registered and widely promoted for over thirty years).

In this case, Alden registered its trademark in 1991.[25] Since that time, and going further back to the founding of the company in 1884, Alden has been widely recognized in the footwear industry as producing a consistently excellent product and has poured millions of dollars into product design and marketing. *See Northern Light*, 97 F.Supp.2d. at 114 (elements favoring strength of a mark included "the accolades the Plaintiff has received, the registration of the mark with the United States Patent and Trademark Office," and the money spent advertising). As a result of this effort, Alden's trademark is well known and is entitled to protection. *See id.* at 114-15; *see also Digital Equip.*, 960 F.Supp. at 478.

---

[25] *See id.* at ¶ 5.

### III. The Balance of Equities Strongly Favors Alden

After it is determined that there is a likelihood of success on the merits in a trademark infringement case, the key issue becomes whether the harm caused by the prospective injunctive relief will unfairly harm the enjoined party. *See Calamari Fisheries*, 698 F.Supp. at 1005. In this case, Alden has worked tirelessly and invested countless dollars for 120 years to make the name "Alden Shoes" synonymous with high-quality footwear in the United States.[26/] Allowing Joseph's Shoes to taint that goodwill – or, more likely, capitalize on it – irreparably harms Alden in a way that money cannot compensate.

On the other hand, such an injunction would have virtually no effect on Joseph's Shoes. Rather, the defendant would only be forced to refrain from holding itself out as an exclusive distributor of Alden shoes (which it is not); to remove the "Alden Shoes" trademark from its website; and to remove the Alden name from its website's metadata. None of these changes would hinder Joseph's Shoes ability to run its retail store or sell shoes on the Internet.

### IV. Irreparable Harm Will Result if Joseph's Shoes is Not Enjoined from Infringing Alden's Registered Trademark.

As discussed above, in the trademark context, "irreparable harm may be shown even in the absence of actual injury to plaintiff's business based on plaintiff's demonstration of a likelihood of success on the merits of its claim." *Calamari Fisheries*, 698 F.Supp. at 1013. In this case, monetary damages cannot adequately compensate Alden for the loss of potential customers and the loss of consumer and retailer goodwill resulting from the defendant's continuing trademark infringement and misrepresentations regarding Alden's shoes. Further, because Joseph's Shoes continues to wrongfully hold itself out to the public as an exclusive

---

[26/]   *See id.* at ¶ 4-6.

12

distributor of Alden shoes despite Alden's repeated requests to curtail such activity, Alden's concern for future harm is well-justified. *See In re Rare Coin Galleries of America*, 862 F.2d 896, 902 (1st Cir. 1988) (irreparable harm exists where concern is more than mere speculation).

## V.  Public Policy Favors a Grant of Preliminary Injunction

Finally, preliminary injunctive relief is presumed to be beneficial and in the public interest when registered trademarks are infringed, "given the societal value of full disclosure and fair competition, together with the policy of the law to provide at least minimal protection to established trade names." *Digital Equip.*, 960 F.Supp. at 472, *quoting Hypertherm, Inc.*, 832 F.2d at 700.

## CONCLUSION

For the aforementioned reasons, Alden respectfully requests that this Court grant its motion for preliminary injunction.

Respectfully submitted,

**ALDEN SHOE COMPANY, INC.**

By its attorneys,

*/s/ Matthew C. Hurley/*
William M. Hill, BBO # 546160
Matthew C. Hurley, BBO # 643638
Philip J. Catanzano, BBO # 654873
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000

Dated: February 24, 2005

LIT 1499476v1